MORLEY SEWING-MACHINE Co. and others *v.* LANCASTER.

*(Circuit Court, D. Massachusetts. March 5, 1885.)*

1. PATENTS FOR INVENTIONS—INFRINGEMENT—MORLEY AND LANCASTER BUTTON-SEWING MACHINES.

    Letters patent No. 236,350, granted to James H. Morley, on January 4, 1881, for improvements in button-sewing machines, construed, and *held* not infringed by the Lancaster machine.

2. SAME—CONSTRUCTION OF PATENT—RULE AS TO INFRINGEMENT.

    When an invention is simply an improvement on a known machine by a mere change of form or combination of parts, the inventor is only entitled to the specific form of the device which he produces, and he cannot invoke the doctrine of equivalents to suppress other improvements which are not colorable invasions of his own. But where an inventor precedes all the rest, and his machine performs a function never performed by any earlier machine, the court will treat as infringers all who accomplish the same result by substantially the same or substantially equivalent means. In the one class of inventions slight differences may avoid infringement. In the other class, there must be substantial differences to escape such a charge.

In Equity.

*B. F. Thurston* and *Ambrose Eastman,* for complainants.

*T. W. Clarke* and *Geo. E. Smith,* for defendant.

COLT, J. The present case arises upon an alleged infringement of letters patent to James H. Morley, dated January 4, 1881, for improvements in button-sewing machines. The invention relates to the automatic mechanical sewing of buttons to a fabric, and, on the evidence before us, we think Morley may fairly lay claim to have invented the first practical machine for accomplishing this result. In view of the position taken by the learned counsel for complainants, based on the claim that Morley was a pioneer in the art, and his invention a primary one, it is necessary to clearly understand at the outset the legal scope of the Morley patent. For if, on the ground of primary invention, the patent covers every other automatic button-sewing machine, or every other button-sewing machine which makes use of the three groups of mechanism employed by Morley, no matter how radical the changes in the specific mechanism of those groups may be, then it is clear that the defendant's machine infringes, and we need go no further.

In his patent, after describing the machine, Morley declares that the same is only one of different mechanisms he has contemplated, which may be effectually employed for carrying out the main feature of his invention,—the automatic mechanical sewing of buttons to a fabric. But it is manifest that Morley cannot patent the principle of sewing buttons to a fabric automatically, any more than the idea of nailing boxes by machinery, when previously nails had been driven singly and by hand, could be patented. He could only patent the particular contrivance to make the idea practically useful, as the supreme court held in the nail case. *Wicke* v. *Ostrum,* 103 U. S. 461.

Nor do we see how the patent can be held to extend to every button-sewing machine which uses the three groups of instrumentalities employed by Morley, for this is to say that the Morley patent is in no way limited to the specific mechanism described in the specification, but embraces every form of mechanism which these several elements might assume. It is difficult to conceive of a button-sewing machine that is not made up of similar groups of mechanism. To attach a button to a fabric by machinery it would seem necessary to employ some form of button-feeding mechanism, sewing mechanism, and mechanism for feeding the fabric along. To hold broadly that the Morley machine covers every other button-sewing machine which adopts the use of these three groups of instrumentalities in combination, without regard to the specific mechanism employed, is to hold, in substance, that it covers all automatic button-sewing machines. It would, in effect, be another way of securing to Morley a monopoly of the principle of sewing buttons to a fabric by machinery. Morley's patent secures to him the exclusive right to the use of the mechanism described therein. It does not give him the exclusive right to a principle, or to groups of instrumentalities, independent of the mechanism employed.

The most the complainants can ask for, in view of the fact that the Morley invention is a primary one, is that the court should adopt a more liberal rule of construction than is usual in the case of secondary inventions, and thus recognize a principle first clearly laid down in *McCormick* v. *Talcott*, 20 How. 402. When an invention is simply an improvement on a known machine by a mere change of form or combination of parts, the inventor is only entitled to the specific form of device which he produces, and he cannot invoke the doctrine of equivalents to suppress other improvements which are not colorable invasions of his own. But where an inventor precedes all the rest, and his machine performs a function never performed by any earlier machine, the court will treat as infringers all who accomplish the same result by substantially the same, or substantially equivalent, means. In the one class of inventions slight differences may avoid infringement. In the other class, there must be substantial differences to escape such a charge.

The counsel for the complainants strenuously contend for the application of a broader rule of construction, in the case of a primary patent, than is here indicated. They maintain that the defendant, by adopting the three groups of instrumentalities which Morley uses, infringes, whether the specific mechanism of the two machines is substantially equivalent or not. We know of no case of a machine patent, primary or otherwise, which goes to this length. We do not think the cases cited by the complainants establish any broader rule than we have stated.

In *McCormick* v. *Talcott*, 20 How. 403, it was held that the patentee, being the original inventor of the device or machine called the

divider, he would have a right to treat as infringers all who make dividers operating on the same principle, and performing the same functions by analogous means or equivalent combinations. In *Railway Co.* v. *Sayles*, 97 U. S. 554, the court held that the defendant did not infringe, because the patentee was only entitled to the specific form of car-brake which he produced. This was on the ground that the patentee had merely made an improvement in what was old. But in the course of the opinion the court say that if one inventor precedes all the rest, and strikes out something which includes and underlies all that they produce, he acquires a monopoly, and subjects them to tribute.

In *Clough* v. *Barker*, 106 U. S. 166, S. C. 1 Sup. Ct. Rep. 188, it was decided that as Clough was the first person who applied a valve regulator to a burner, he was entitled, under the decisions heretofore made by the court, to hold as infringements all valve regulators which perform the same office in substantially the same way, and were known equivalents for his form of valve regulator. And in the two cases of the *Consolidated Safety Valve Co.* v. *Crosby Steam Gauge & Valve Co.*, 5 Sup. Ct. Rep. 513, just decided by the supreme court, the court hold that the defendant's safety-valve is substantially equivalent in construction and mode of operation to that described in the Richardson patents, on which suit was brought.

The complainants' citations of authorities on the construction of process patents are hardly in point, because if one uses the process described in the patent he may infringe though he employs a different apparatus. *Tilghman* v. *Proctor*, 102 U. S. 707.

In *American Bell Telephone Co.* v. *Dolbear*, 15 FED. REP. 448, it was held that the Bell patent embraced a process, and was not limited to any form of apparatus; and Justice GRAY said that, as the defendant used Bell's process, or method, it was not necessary to consider whether the defendant's apparatus was a substantial equivalent of the plaintiff's.

As a result of the foregoing inquiry it becomes necessary, in the consideration of this case, to compare the mechanism of the Morley machine with that used in the defendant's machine, to ascertain whether or not they are substantially equivalent. It has been observed that both machines embrace three main groups of instrumentalities,—mechanism for feeding the buttons to the machine, sewing mechanism for receiving and taking possession of the buttons in succession and securing them to the fabric, and mechanism for feeding the fabric along and thereby spacing the buttons at the required distance from each other. The button-feeding mechanism in the Morley machine consists, in substance, of a hopper for receiving the buttons. In this hopper there is a hopper-valve, which picks out the buttons one by one and delivers them into an inclined trough. The buttons enter this trough with their shanks turned in different directions. A corrugated strip of metal lying over the top of the trough, which

is oscillated by proper machinery, rolls the buttons over so that their shanks or eyes lie in the slot or groove at the bottom of the trough. The buttons slide down the trough. At the lower end of the trough there is a button-wheel provided with pockets, each capable of holding a button. The button-wheel rests on a stationary table, and when a button arrives over a notch in the table a plunger or punch descends into the pocket, and drives the button into what is termed a split-spring spoon. The spoon turns round on its axis 90 degrees, in order to bring the eye of the button into a horizontal position, so that it can be entered by the needle. The patent also describes a modified form of contrivance for bringing the buttons successively into position to permit the needle to pass through the eye of the button. In this modification the button-wheel is dispensed with, and a spring applied to the bottom of the trough, which holds the column of buttons in place. This spring, or spring-gate, is opened at intervals and shuts itself. Spring-nippers are used to transfer the button from the trough to the sewing mechanism. These spring-nippers open the gate at the bottom of the trough, receive and clamp the button, and turn it over 90 degrees, so that the shank may be in a horizontal position to be entered by the needle. In the defendant's machine the buttons are thrown into a hopper provided with a reciprocating brush, which forces the buttons into slits, with their bodies down and shanks up. These slits converge into a single slit. Just before reaching the end of the raceway the slit is twisted, so that the shanks of the buttons are presented in a horizontal position at the end of the raceway, ready for the needle to enter. The column of buttons is held up by a spring, or spring-gate, and this spring-gate is opened by the button itself, owing to the vibratory motion of the raceway. The thread passing through the eye of the lowest button, it is prevented from vibrating, but the button is pulled out, and in pulling out overcomes the resistance of the spring.

It thus appears that the defendant's machine has no hopper-valve, and no corrugated plate for turning the buttons over in the trough; but more important than this, it has no button-wheel, or table, or punch, or split-spring spoon, or spring-nippers, or any equivalents therefor. By presenting the button shank upwards in the raceway, or trough, and then twisting the slit in the raceway which holds the shanks, the Lancaster machine dispenses with all the mechanism in the Morley patent for bringing the buttons from the end of the trough to a position to be operated upon by the needle. We think an inspection and comparison of the button-feeding mechanisms of the two machines show them to be essentially different.

As to the sewing mechanism of the two machines we deem it unnecessary to enter into details. It is admitted by the complainants' expert, as it is apparent on inspection of the machines, that the stitching or sewing mechanism of the Lancaster machine is different from that shown or described in the Morley patent, and that the form of

stitch is different. Unless, therefore, the Morley patent covers all forms of sewing mechanism, or all forms in combination with button-feeding and cloth-feeding devices, there can be no infringement. The mechanism for feeding the fabric along and spacing the buttons is substantially the same in both machines. We do not understand that Morley claims that he invented this feed mechanism, or that it is new.

The complainants charge the defendant with infringement of the first, second, eighth, and thirteenth claims of the Morley patent, which are as follows:

(1) The combination in a machine for sewing shank-buttons to fabrics, of button-feeding mechanism, appliances for passing a' thread through the eye of the buttons and locking the loop to the fabric, and feeding mechanism, substantially as set forth.

(2) The combination in a machine for sewing shank-buttons to fabrics, of a needle and operating mechanism, appliances for bringing the buttons successively to positions to permit the needle to pass through the eye of each button, and means for locking the loop of thread carried by the needle to secure the button to the fabric, substantially as set forth.

(8) The combination in a machine for sewing buttons to fabrics, of button-feeding and sewing appliances, substantially as set forth, and feeding appliances and operating mechanism, whereby the feeding devices are moved alternately different distances to alternate short button stitches, with long stitches between the buttons, as specified.

(13) The combination, with button-sewing appliances, of a trough, appliances for carrying the buttons successively from the trough to the sewing devices, and mechanism for operating said appliances and sewing devices, as set forth.

Holding that the Morley patent under the law is limited substantially to the mechanism set out and described therein, and having found that the button-feeding mechanism and the sewing mechanism of the Lancaster machine are not substantially the same as, or substantially the equivalent of, those in the Morley machine, it is clear that the defendant does not infringe any of the above claims. It follows that the bill must be dismissed; and it is so ordered.