RUUD MFG. CO. et al. v. BELER WATER HEATER CO. et al.

(Circuit Court of Appeals, Second Circuit. January 11, 1916.)

No. 118.

PATENTS ☞328—VALIDITY AND INFRINGEMENT—WATER HEATER.

The Ruud patent, No. 1,028,284, for a water heater, *held* not anticipated and valid, and claims 2, 3, and 5 infringed; claims 1, 4, and 6 *held* not infringed.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the Ruud Manufacturing Company and another against the Beler Water Heater Company and another. Decree for complainants, and defendants appeal. Affirmed.

This cause comes here upon appeal from a decree finding a certain patent valid and infringed. The patent is No. 1,028,284, issued June 4, 1912, to Edwin Ruud for a water heater. It set forth an apparatus intended to remedy certain defects in a prior water heater for which the same inventor had obtained United States patent No. 903,007, on November 3, 1908. Infringement was charged as to all the six claims of the patent; all were held valid, but infringement was found only as to claims 2, 3, and 5. No cross-appeal was taken from the holding that claims 1, 4, and 6 are not infringed.

The following is the opinion of Learned Hand, District Judge:

It is undoubtedly true that in this art invention has pressed close around Ruud's exact disclosures, and has left very little room for any broad scope of invention. Still the words of the claims are specific, and upon the question of infringement they should be allowed a reasonable interpretation as broad as the prior art will permit. This right is not 'limited by the fact that the patent has not been commercially exploited. The Paper Bag Patent Cases, 210 U. S. 405, 28 Sup. Ct. 748, 52 L. Ed. 1122. In view of the distinction clearly intimated in the claims between a double spring and any other kind of compound or divisible power device, I cannot accept the doctrine of equivalents as applied to claims 1, 4, and 6, and I find that they are not infringed. There remain claims 2, 3, and 5. In claim 2 the words used are "power device," which the water valve "in part" overcomes, while in claim 3 the words are "compound power device," of which "one part" is overcome. Claim 5 is mere-

ly an awkward piece of tautology, restating claim 3. Indeed, I think that there is no reason for distinguishing even between claims 2 and 3; but in view of the distinction attempted to be made I shall consider claim 3. Infringement therefore depends upon whether the defendant's heater has a compound power device closing the valve in opposition to the thermostatic means, and a mechanism which, when the water flows, overcomes one part of this compound power device.

Now, confessedly the spring, 41, of Ellis' patent is a power device which holds the valve closed in opposition to the thermostat, and this power device is overcome by the water piston, 35, when the water flows. Is there anything else which keeps the valve closed, and which the thermostat must overcome to open the valve? What does keep the valve closed when the water piston is moved down and releases it? In Ellis' patent the answer is easy; it is the spring, 9. But there is no such spring in the commercial device, because in it the valve is closed by the gas pressure and by the weight of the valve itself. Of course, we are to disregard the gas pressure, that not being included in the mechanism as described; there remains, therefore, only the weight of the valve.

The defendant argues that the claims clearly intend an element other than the valve proper, since the claims enumerate first the valve as one element and later a separate element closing the valve. To confuse the two into one is to disregard the combination actually prescribed and to substitute another; the weight of the valve is not a separate mechanical element from the valve, since it must have its weight, qua valve, as soon as it is put into the machine. How, then, the defendant says, can there be said to be a second power device, besides the valve, which holds it closed?

This argument is perfectly good if we insist upon a separate material element besides the valve as part of the compound power device; it ceases to be relevant if we look at the actual dynamic relation of the parts when we judge of the power device. For example, if the valve were made horizontal, it would be the same valve, with the same weight, in the same seat; everything would be the same, but the valve would never close if the water piston stuck. This would be so because the valve would not then be a power device closing itself. Its position, its relation to the seat, the direction of its permitted play, together constitute it a power mechanism operating through the force of gravity to close itself as soon as the thermostat has relieved it of pressure. The potential energy of position, which it obtains when raised above its seat, is as truly a reserve of power, the result of the necessary expenditure of energy, as is the reserve of potential energy within the coils of a spring, which is itself the result of the necessary expenditure of energy. Indeed, courts have specifically recognized the equivalence between the two. Kenny Mfg. Co. v. J. L. Mott Iron Works (C. C.) 137 Fed. 431, 433. Therefore, I find that the defendant's heater infringes claims 2, 3, and 5, and not claims 1, 4, and 6.

The next question is of invention, upon which the nearest reference is Shook, 993,723. This patent was in interference with Ruud in the Patent Office and won the claims. The defendant insists that the claims so contested are the equivalents of those in suit and that they are therefore invalid. Now, the controversy in interference was waged chiefly upon the question whether the claims in issue read upon Shook. Ruud asserted that they did not, because they contained the element "a normally seated valve." The board of examiners, for two appeals were taken, held that the words "normally seated valve" meant that the valve was seated when there were no extraneous controlling means at work. The examiner had drawn the claims, and it was held that they did not mean to describe an apparatus in which the valve was held closed by a compound power device when the water was turned off and the thermostat was cold. Obviously, such must have been the finding, because the Shook disclosure has no such structure.

Nevertheless, in the claims in suit this is certainly the meaning of the word "normally." It means that the thermostat tends to open the valve when it is cold, and that it is opposed by two forces which are together stronger than it, but not severally; at least it means that that one is weaker which is left in operation when the water valve is open. Shook is not so organized; on the contrary the thermostat, when cold, is not opposed by any power which

affects the valve at all. On the other hand, when hot, the thermostat presses against and overcomes the water valve spring, thus locking the valve, instead of being neutral, as in Ruud or in Ellis. Indeed, the spring, 33, is not necessary at all to the operation of Shook, except that it reinforces the thermostat, which without would have to withstand the whole force of the spring, 41, which would result possibly in rupturing or bending it. Again, the thermostat never overcomes any part of a compound power to open the valve; rather, it overcomes the single power which would otherwise open the valve. Finally, the water valve does not overcome a part of a compound power mechanism for closing the valve, because the mechanism is simple, not compound, when the thermostat is cold, and the water valve does not overcome the joint resistance of the thermostat and the spring, 33, when the thermostat is hot.

Owing to the quite different organization of these two disclosures, they have no correspondence in the claims. There only remains the question of whether it required invention to pass from one to the other. It is true that the patentee has never exploited the patent. Yet the examiner, with Shook before him, gave these claims preference over Shook, and it enjoys whatever presumption arises from that fact. The art, as I have said, is close; much ingenuity has been expended upon the different relations of all these parts, and, while there may be question of the value of the several results, I cannot say that such a new and workable arrangement is not an invention. The complication of the whole machine, the necessity for correlation between all its parts, the number and variety of the considerations which bear upon the result, all forbid an easy assumption that any new and operable adjustment would be within the competence of the routine artisan in the trade. I do not think that Shook constitutes an anticipation.

Walker, 886,100, hardly needs any extended consideration, for it operates in quite a different way from Ruud's patent. No compound power device closes the valve when the machine is "normal" against the thermostat; nor does the water valve overcome one part of the closing device. This was the first single valve heater, and, whether it will operate or not, it is organized quite differently from Ruud's.

In Humphreys there is no compound power device closing the valve, since we are to suppose the end of the rod, 41, to slide freely within the gas valve, pushing it open when the collar engages, but capable of sliding out when the rod is drawn back, after the valve is once seated. It must be admitted that the thermostat would tend to open the valve, if the water valve became stuck while the thermostat was hot and the water then cooled down. However, the water valve does not overcome one part of a compound power device to allow the thermostat to overcome the remainder. The whole plan of organization of the patent is so entirely different that it has no value as a reference upon these claims, limited as they are.

These are the only patents which require any comment, for the art is small. Whether Shook is a better single valve machine than Ruud I need not decide. It seems to me that there may be force in what Wadsworth claims for it—that it allows a lighter thermostat and a nicer adjustment. The fact that it has not been actually exploited does not finally contradict such a conclusion. The two patents are in the same hands, and with the machinery all built for making Shook it may be more economical to make it than to develop a trade upon Ruud. That would be a valid consideration, were Ruud's patent dependent for its existence upon some exploitation, but not as things are. There is nothing in the record to contradict the opinion of Wadsworth that the Ruud patent is an improvement on anything that went before. It may be that Ellis is an improvement upon Ruud.

A decree may pass upon claims 2, 3, and 5. No costs.

Paul M. Goodrich, of New York City, and J. H. Roney, of Pittsburgh, Pa., for appellants.

S. T. Cameron, of Washington, D. C., J. C. Bradley, of Pittsburgh, Pa., and R. L. Scott, of New York City, for appellees.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. The District Judge found that, although in this art invention has pressed close around Ruud's disclosures, he did set forth a specific combination of parts, which was novel and meritorious. The opinion has discussed the patent, the prior art, and the various questions presented at considerable length, and it seems unnecessary to repeat the discussion here; we are inclined to affirm on his opinion, without taking up in detail the criticisms of that opinion which are found in appellant's brief. Judge Hand may have made some errors in undertaking to paraphrase the respective contention of Shook and Ruud during their long controversy in the interference proceeding in the Patent Office. From the many opinions filed in that interference, however, and from the text of the several claims, it is manifest that such controversy was confined to the generic claims, claims broad enough to cover the specific devices of either party to the controversy. Shook was awarded priority for these generic claims; but it by no means follows that specific claims, which would infringe the generic claims, were not properly granted for the specific improvements therein set forth. The authorities in the Patent Office found patentable invention in these specific claims of Ruud, although no one could embody them in a machine without infringing the broader claims of Shook. Judge Hand reached the same conclusion, and we see no reason to differ from him.

The decision in the Third circuit in the suit brought under the Shook patent against defendant's structure does not affect the question here presented. The device of defendant was properly held to infringe the Shook claims, but the court did not have before it the question whether this device (defendant's) was or was not constructed so as to embody the narrow claims of the Ruud patent here in suit.

Infringement seems to us clear: patents which are not pioneers are nevertheless entitled to a reasonable range of equivalents. The change from a spring to a weight is such a common and well-recognized substitute that it must be held an equivalent, unless the claim is specifically restricted by its language to a device which is moved by a spring—as are claims 1, 4, and 6, which Judge Hand held were not infringed.

The decree is affirmed, with costs.