## STAR CAN OPENER CO. v. OWEN DYNETO CO.

(Circuit Court of Appeals, Second Circuit. December 24, 1926.)

No. 211.

Patents ⊜⇒328—1,360,256 and 1,528,178, both for can opener, held valid and infringed.

Anderson patents, No. 1,360,256, granted November 30, 1920, and No. 1,528,178, both for a can opener, involving means for holding can and applying cutting edge of circular disc to side of can just below flange, *held* valid and infringed.

Appeal from the District Court of the United States for the Northern District of New York.

Patent infringement suit by the Star Can Opener Company against the Owen Dyneto Company. Decree for plaintiff, and defendant appeals. Affirmed.

Suit is upon two patents, both covering inventions of one Anderson, and both owned by plaintiff. The earlier patent is for a can opener and granted November 30, 1920 (No. 1,360,256). The later patent is also for a can opener and was applied for June 8, 1921, and granted March 3, 1925 (No. 1,528,178).

The court below found all the claims in suit valid and infringed; defendant appealed.

Ramsay Hoguet and Thomas J. Byrne, both of New York City, for appellant.

Stephen J. Cox, of New York City, for appellee.

Before HOUGH, HAND, and MACK, Circuit Judges.

HOUGH, Circuit Judge. This can opener is a means of getting at the contents of the usual tin can, commonly containing articles of food, and commonly cylindrically formed of a sheet of tinned metal soldered at the line of juncture and terminating at top and bottom in a "flange," viz. the meeting of the bottom or top and the cylindrical wall of the can. The opener is a manually operated tool, which grasps the flange of the can and provides means, while the can is thus firmly held, to apply the cutting edge of a circular disc, also manually actuated just below the flange and sever the side completely, so that at the end of the cut around the can the cover or top part, still firmly held by the flange, is lifted clear.

Plaintiff's commercial embodiment of these patents has, without the meretricious aid of advertising, achieved in an extremely short time marked commercial success. It is a true tool—i. e., manually operable without the expenditure of much physical strength—

16 F.(2d)—23

strong, light, cheap, and apparently durable. That upon the ordinary food tin, composed of light sheet metal, it makes a cleaner job, with far less risk of personal injury to the operator, than does any other can-opening tool brought to our attention, is we think admitted.

The earlier patent states that the object of invention is to provide for "opening cans by cutting the ends from the body portions by a circumferential cut through the can wall." This is to be done by providing the opener with "an advancing and a cutting roller, which are adapted to be clamped in opposed relation against opposite sides of the flange or seam of a can, in such manner that the cutting disc or roller will sever the can wall and the can will be revolved against the cutter by revolving the advancing roller."

The disclosure shows a set of levers arranged pincer- or scissor-wise, one lever terminating in a knurled disc manually revoluble, the other terminating in a roller which is the cutting disc. When the scissor handles are open, the can flange is grasped between the knurled and cutting discs or rollers, the knurled one being on top of the can, and when that is revolved its roughened edge advances the flange between the two rollers— the cutting one severing the can wall as it progresses.

It is apparent, says the disclosure, that "such a can opener is simple in construction and in operation, and can be applied to cans of different sizes without adjustment, and will sever the wall in a clean-cut edge." Of the claims in suit (1 and 2) the second is more specific, and is as follows:

"A can opener of the character described comprising a pair of pivotally connected handles, an advancing roller revolubly mounted at the end of one of said handles, a cutting disc revolubly mounted at the end of the opposite handle in opposed relation to the roller; said roller and disc being adapted to be clamped by the handles against opposite sides of an edge can flange to press the cutter through the can wall, a peripheral shoulder on the cutting disc for limiting the depth of the cut made thereby and a crank for revolving the advancing roller for the purpose set forth."

The second and later patent elaborates the concept of the first, in that, instead of grasping the can flange between the knurled or advancing and manually operated roller and the knife or cutting edge, two rollers are provided, one in each lever. The lever bearing the roller that is placed on top of the can is re-

cessed, so as to permit (when the scissor-form levers are closed) the roller at the end of the other lever to come into such close juxtaposition with the roller placed on top of the can that the flange thereof is firmly grasped between the two rollers, while the cutting is done by the edge of a disc integral and concentric with the lower roller, but of slightly larger circumference. Thus the can flange is grasped by and between the rollers, and upon the revolution of the knurled roller (which may be either) the can is revolved and its wall severed immediately below the flange.

The advantage of this second form is that the can flange is more securely gripped by means of the two rollers than it is by means of one roller and a knife edge, and thus danger of slipping and consequent personal injury is minimized—apparently entirely eliminated. Of the claims in suit (1, 6 and 7) the first is typical and is as follows:

"In a can opener, a driving roller fixed on a spindle and having a knurled periphery, a pair of handle members pivoted together, one of said members having a recess, the other member carrying a bearing adapted to seat in said recess when the members are gripped together about the pivot, a spindle and hand-operating portion carried in said bearing and adapted to rotate said driving roller, and an idler roller on the other member positioned opposite said driving roller, and a cutter disc adjacent one of said rollers and arranged to overlap the handle of the other roller when in cutting position."

The commercial embodiment of plaintiff's patent does not fully respond to the drawings of either patent, but it is possible to rotate the can or advance the tool by knurling either roller; i. e., the one placed on top of the can or the one placed on the side thereof. Either roller may be the driving one, and in the first patent the driving roller is the one on top, and in the second patent the one on the side. But the claim just quoted permits either roller to be the driver and either to be the idler. It is a fair description of the commercial embodiment in evidence to say that it contains and exhibits the driving arrangement of the first patent—i. e., the knurled roller on top of the can—and the cutting arrangements of the second.

Defendant's article is, in our judgment, a copy of plaintiff's commercial product, except that, instead of arranging the levers scissorwise, they operate like a nut cracker; i. e., there is a change from one class of lever to another.

It is not contended that infringement can be escaped by such a device; but it is urged that, since the claims of the first patent all speak of cutting disc and advancing roller "mounted at the end" of a handle or lever, that defendant's nut cracker arrangement prevents the rollers, etc., from being at the end of the levers, because the ends are joined together as a nut cracker usually is. We think it an answer to the contention that in both plaintiff's and defendant's devices the cutting discs and rollers are *mechanically* at the end of a lever, and, if that be true, it makes no difference where the alleged infringer chooses to put his fulcrum; the "end" of the patent means in common language the "business end."

Considered, then, without reference to those earlier human achievements called the prior art, it seems to us clear that this patentee, by the exercise of what may fairly be called the inventive faculty, has contributed substantially to the useful arts. The thought embodied in the claims in suit responds to substantially all the evidences or tests of invention of which a considerable catalogue is given in Kurtz v. Belle (C. C. A.) 280 F. 277.

But it is here urged, and has been held in a suit on some of the claims now before us (Star, etc., Co. v. Ace, etc., Co. [D. C. N. D. of Ill., Sept. 24, 1926, not for publication]), that in view of what had gone before, no more than the skill of a mechanic was shown in adapting from old devices the tool of the patent.

In this conclusion we cannot concur. It is admittedly true that the general concept of advancing a disc cutter by means of the revolution of an adjacent knurled roller, when the flange of a can is by some means held between these two parts, is not per se new. There have been patents granted for "bench" machines firmly fixed to a support for (inter alia) holding the can, which accomplish the feat of removing the can top by severing the can wall. Janzon (German), 186,518, 1906; Heer et al. (British), No. 1318 of 1912, and others. We think it too plain for citation that, even admitting that the general principle of plaintiff's operation was embodied in the cumbrous devices shown by the above patents, it required invention to produce a light, cheap, durable, portable, hand-operated tool, even for producing the same result. It required invention to devise a pair of pincers, that could grip the can flange securely without much physical effort, and the two rollers, one fitting into effective juxtaposition with the other by means of the recess described in the second patent. This patentee took the step that counts.

But it is further urged that the patent to Wolfer, 1,024,543, and that to Weigel (German), 282,768 of 1914, are for manually operable devices, and, if not anticipations, are so close to the patents in suit as to reduce them from the inventive grade to that of mere cleverness in familiar mechanics. Of these patents we first note, as something positively shown by the disclosures (although it has been a matter of some argument here), that both were not devices for removing the whole top by severing the wall of a can, but of cutting out the cover to effect the result familiar in many forms of hand can openers in current use. The Wolfer patent distinctly says that its "rotary cutter smoothly *cuts out* the cover in a complete circle. A can so opened can be used again after suitably flanging over the upper edge, as no bends of any kind are formed in the cutting." The Weigel patent, in the translation in evidence, declares as its result "that the knife is guided along the border of the can and that the cover of the latter is thus *cut out.*" A study of the diagrams attached to these patents confirms the disclosure statement.

Whether a disc cutter driven by a knurled roller in a circular path near the periphery of a can cover would ever be mechanically successful may perhaps be doubted. But there are in evidence here (and wholly without contradiction) embodiments of the devices revealed and described by the Weigel and Wolfer patents, and we are satisfied by this evidence that both patents are inoperative. In the light of this evidence we do not think it necessary to consider whether it was "merely a matter of the positioning of the cutter," and therefore involving no invention, to change the combination of advancing roller and cutting disc calculated to "cut out" the top of a can, into a combination capable of *cutting off* the whole top including the flange. An inoperative patent seldom gives to the public anything beyond its own inoperativeness, and these patents are no exception to the rule.

Decree affirmed, with costs.