**BLACK & DECKER MFG. CO. et al. v. BALTIMORE TRUCK TIRE SERVICE CORPORATION.**

No. 2889.

Circuit Court of Appeals, Fourth Circuit.

April 8, 1930.

Edwin F. Samuels, of Baltimore, Md., for appellants.

John C. Kerr, of New York City (Cooper, Kerr & Dunham, of New York City, and Venable, Baetjer & Howard, of Baltimore, Md., on the brief), for appellee.

Before WADDILL and PARKER, Circuit Judges, and McDOWELL, District Judge.

PARKER, Circuit Judge.

This suit was instituted in the court below to enjoin infringement of patent No. 1,458,-920, issued to Frederick J. Troll. Complainants were the assignee of the patent and the exclusive licensee thereunder. The defendant was a tire service corporation of Baltimore which was using one of the infringing devices manufactured by the E. & T. Fairbanks Company. That company defended the suit. From a decree holding one of the claims relied on to be invalid and the others not to be infringed, complainants have appealed.

The patent in suit covers a "road bearing pressure meter" or small platform scale, designed for ascertaining the wheel load on motor vehicles. It is used by traffic officials for the purpose of detecting violations of state laws against the overloading of vehicles driven on the public highways and by tire manufacturers and dealers for ascertaining the wheel load on tires on motor vehicles and thus determining the proper size of tires to use. It has three distinguishing characteristics: (1) It is manually portable, i. e., it is so light that it can be handled without difficulty by one man; (2) it is low and flat with sloping approaches from two directions, and for this reason peculiarly adapted for use in weighing automobile trucks, which can be driven on and off of it without difficulty; and (3) although small and light, it is equipped with a weighing device which registers with substantial accuracy weights as great as 20,000 pounds. It is thus described together with the purpose for which it was intended in the application for the patent:

"The destruction of road surfaces incident to heavy traffic, particularly motor vehicle traffic, has resulted in legislation limiting the weight per unit of tire width which may be carried on road vehicles. The territory in which such legislation is enforced is being rapidly extended, though the adoption of such laws has been retarded on account of the difficulties incident to inspection. Where violation of the law in this regard is merely suspected, to compel the driver of a heavily loaded vehicle to depart from his route, in order that the vehicle and load might be weighed, would work extreme hardship and often injustice.

"The present invention is intended to overcome this difficulty by providing a convenient portable device for determining the bearing pressure on tires. This apparatus may be used either by the operator of the vehicle to avoid violation of the law, or by traffic officers and the like to detect such violations, the same being adapted to be carried conveniently by a traffic officer in his machine, and of such weight that it can be removed from the machine and handled and arranged for operation by one man. It is also comparatively inexpensive, so that it may logically be a part of the equipment, as are the speedometer, and other testing and indicating devices, as air gauges, jacks, etc.

"The apparatus consists of a portable yielding support, having means for indicating the weight borne by the support, the same being of small dimensions and low or flat, and adapted to be placed beneath any one of the wheels of a road vehicle to determine the weight borne by it. As the most convenient means of getting it beneath the wheel is to place it in the road and run the wheel on to it, a run-way is a convenient, if not a necessary part of the equipment, and the run-way or run-ways are preferably made detachable, so that the weighing member or support may be handled separately from the run-way and if desired, used separately therefrom. In the accompanying drawing I have illustrated in detail a portable road-pressure meter, combining my invention in its preferred form.

"As a means particularly adapted to the accurate measurement of the heavy weights which must be dealt with in this connection, there is shown in connection with the invention in its preferred form a coil or other arrangement of flexible tubing, containing fluid which operates in connection with a fluid pressure gauge, to determine the pressure on the yielding support, the coil of tubing being so placed that the pressure of the yielding member is applied directly to its lateral surfaces. * * *

"By using my road bearing meters in pairs spaced apart by the width of the tread so that the wheels may be run on them in pairs, it is made possible to read all four wheels correctly with comparatively little effort or a maximum reading may be obtained by merely running over the meters thus placed."

In the commercial scale manufactured under the patent, the runways are not detachable but are made as a part of the framework of the scale. The flexible tubing suggested as a part of the weighing device is not used, but the weight on the platform is measured by means of levers bearing upon a flexible diaphragm over a chamber filled with oil and a gauge which registers the pressure of the oil. Of the claims of the patent relied on,

the following, 2, 5, and 15, may be taken as typical:

"2. A tire bearing pressure meter, comprising a manually portable apparatus including a base, a platform member and a guide therefor, a resilient member of sufficient resistance to carry a wheel of a loaded truck supporting the platform member, said apparatus being of extremely short vertical dimension and having an inclined portion leading to the platform so that the wheel of a truck can be run onto it without difficulty when it is placed in the roadway and means for indicating the pressure on said resilient member."

"5. A bearing pressure meter for roads, comprising a manually portable apparatus, of short vertical dimension having a yielding support for a vehicle wheel the same being of width only sufficient to receive and support a single wheel and means for indicating the pressure on the support."

"15. A method of determining wheel pressure of road vehicles while the vehicles are on the road, which consists in placing a plurality of manually portable independent weighing units on the roadway in the path of the wheels, spacing them apart to correspond to the tread, running the wheels onto the weighing units and reading the respective weighing units."

As stated in the application, the patent was developed in response to the need for means of weighing trucks which were suspected of violating the laws against overloading. With the increase of automobile traffic, the problem of overloading, with consequent damage to the highways, had become a very real one. On one road in Maryland, the damage done in a single year amounted to approximately $600,000, whereas the estimated saving to private persons as a result of the overloading did not exceed $15,000. Laws against overloading were enacted; but these were hard to enforce because of the difficulty in proving the weight of the loads. At first, platform scales of the ordinary type were installed for this purpose at various points on the roads. These, however, were expensive and ineffective. Violators of the law soon learned of their location and avoided them. A portable weighing jack was then used for a while, but this, too, failed to solve the problem. It was difficult to obtain accurate results with it, and its use consumed so much time that blocking of traffic frequently resulted. The small platform scale covered by the patent exactly met the situation, and quickly came into use in thirty-six states of the Union and sixteen foreign countries for testing loads on highways. It came immediately into use also by tire dealers and manufacturers in their testing of tires.

The development of the infringing scale used by defendant resulted from the effort of the licensee under the patent to make a sale to the Firestone Tire & Rubber Company for the latter purpose. That company and the licensee were unable to agree on a price, whereupon the Firestone Company entered into negotiations with the E. & T. Fairbanks Company, which has for many years been engaged in the building of scales, to manufacture a similar scale for it. The Fairbanks Company's engineer, with one of the patented scales before him, was able to build one very similar to it, except that the Fairbanks scale was a little larger and a little heavier and substituted a system of levers with a beam and poise as the weighing device for the oil pressure gauge. It not only looked like the scale of the patent, but was designed for the same purpose and accomplished the same result in practically the same way. The change in the weighing device was but the substitution of a well recognized equivalent.

We entertain no doubt that Troll's scale was patentable. It is true that all of the ideas which it embodied were old; but their combination resulted in a product which was entirely new. It was old to determine the weight of a vehicle by weighing each of its wheels separately. The platform was old, and so also was the sloping approach to the platform. And there was nothing new, of course, in measuring weight by pressure on liquid with the use of a Bourdon tube and gauge. But it was new to combine all of these features in a scale so small that it could be carried about by a single man, but with a capacity so great that it could be used to weigh a load of 80,000 pounds. It was not a mere aggregation of things which were old in the art; but the combination of things that were old in such way that they co-operated to produce an entirely new result. The product which resulted from the combination was not an ordinary scale, but a scale of a peculiar sort, more properly considered as one of the accessories of the automobile and the motortruck, the development of which has been regarded as a distinct art. Collins v. Hupp Motor Corporation (D. C.) 4 F. (2d) 272. The rule which we think applicable in such a case was well stated by Judge Severens, speaking for the Circuit Court of Appeals of the Sixth Circuit in Western Electric Co. v. North Electric Co., 135 F. 79,

89, as follows: "While the mere assembling in a new organization of parts of old structures to perform the same function in their new place that they did in the old is not invention, yet where they are so taken and are organized in a new and useful manner, so as to produce a more beneficial result, there may be invention; and when the combination displays the exercise of intuitive skill and genius beyond that possessed and exercised by those well skilled in the practice of their art, and the discovery is of something new and useful, invention should be recognized."

And in view of the fact that the patentee produced a new and beneficial result never achieved before, viz., a manually portable scale by means of which heavily loaded trucks could be weighed, what was said by Mr. Justice Bradley in Webster Loom Co. v. Higgins, 105 U. S. 580, 591, 26 L. Ed. 1177, is peculiarly appropriate: "It may be laid down as a general rule, though perhaps not an invariable one, that if a new combination and arrangement of known elements produce a new and beneficial result, never attained before, it is evidence of invention. It was certainly a new and useful result to make a loom produce fifty yards a day when it never before had produced more than forty; and we think that the combination of elements by which this was effected, even if those elements were separately known before, was invention sufficient to form the basis of a patent."

In like manner it may be said that it was a new and useful result to produce a platform scale light enough to be carried by one man but with sufficient capacity to weigh a forty-ton truck, and that the combination of elements by which this was effected was invention sufficient to form the basis of a patent, even though those elements were separately known before. There can be no doubt that a device is patentable even though it consist of a combination of old elements, if the combination forms a new machine of distinct character or formation, as is the scale here. Parks v. Booth, 102 U. S. 96, 102, 26 L. Ed. 54; Wicke v. Ostrum, 103 U. S. 461, 469, 26 L. Ed. 409; Deere v. Rock Island Plow Co. (C. C. A. 7th) 84 F. 171; Buchanan v. Perkins Electric Switch Mfg. Co. (C. C. A. 3d) 135 F. 90; Lavigne Mfg. Co. v. John F. McCanna Co. (C. C. A. 7th) 194 F. 112; E. H. Freeman Electric Co. v. Johns-Pratt Co. (C. C. A. 3d) 204 F. 288; Id. (D. C.) 201 F. 356; Proudfit Loose Leaf Co. v. Kalamazoo Loose Leaf B. Co. (C. C. A. 6th) 230 F. 120, 127; Emery v. George H. Bowman Co. (C. C. A. 6th) 11 F.(2d) 525;

United States Industrial Chemical Co. v. Theroz Co. (C. C. A. 4th) 25 F.(2d) 387, 391; 20 R. C. L. 1126; Walker on Patents (6th Ed.) 95.

We have carefully considered the prior patents relied upon as anticipations. Without entering into a discussion of their characteristics, it is sufficient to say that all of them relate either to nonportable platform scales of the familiar type or to devices of the jack type for weighing the wheel load on railroad cars or vehicles such as the old style wagon or buggy. As said by the Examiners in Chief of the Patent Office, no one of them discloses a device which was intended for the purpose of the invention, no one of them is adapted to such purpose, and no one of them is suggestive of the invention. Even if the invention be regarded as an adaptation of the old platform scale, there can be no question that the changes made in it to adapt it to the new use of ascertaining the wheel load on motor vehicles constitutes patentable invention within the rule of Seymour v. Osborne, 11 Wall. 516, 548, 20 L. Ed. 33, which was stated by Mr. Justice Clifford as follows: "Particular changes may be made in the construction and operation of an old machine so as to adapt it to a new and valuable use not known before, and to which the old machine had not been, and could not be, applied without those changes, and, under those circumstances, if the machine, as changed and modified, produces a new and useful result, it may be patented, and the patent will be upheld under existing laws. Such a change in an old machine may consist merely of a new and useful combination of the several parts of which the old machine is composed, or it may consist of a material alteration or modification of one or more of the several devices which entered into its construction, and whether it be the one or the other, if the change of construction and operation actually adapts the machine to a new and valuable use not known before, and it actually produces a new and useful result, then a patent may be granted for the same, and it will be upheld as a patentable improvement."

See also Richmond Screw Anchor Co. v. U. S., 275 U. S. 331, 48 S. Ct. 194, 72 L. Ed. 303; Edison Electric Light Co. v. U. S. Electric Lighting Co. (C. C. A. 2d) 52 F. 300; Toledo Computing Scale Co. v. Computing Scale Co. (C. C. A. 7th) 208 F. 410; Star Can Opener Co. v. Owen Dyneto Co. (C. C. A. 2d) 16 F.(2d) 353.

But if there were doubt, which we do not think there is, as to the patentability of

Troll's scale, there can be no question that such doubt should be resolved in favor of the validity of the patent. To the presumption of validity attaching to the grant of the patent by the Patent Office, there is the additional presumption arising from the fact that the invention filled a want arising from a new situation, that it entered into immediate use, and that it met with pronounced commercial success. Temco Electric Motor Co. v. Apco Mfg. Co., 275 U. S. 319, 48 S. Ct. 170, 72 L. Ed. 298; Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U. S. 428, 31 S. Ct. 444, 55 L. Ed. 527; Pangborn Corporation v. W. W. Sly Mfg. Co. (C. C. A. 4th) 284 F. 217. And in addition to this is the presumption arising from the imitation of the patented article by the manufacturer of the alleged infringing device. As to this, we agree with what was said by Judge Hough, speaking for the Circuit Court of Appeals of the Second Circuit in Kurtz v. Belle Hat Lining Co., 280 F. 277, 281: "The imitation of a thing patented by a defendant, who denies invention, has often been regarded, perhaps especially in this circuit, as conclusive evidence of what the defendant thinks of the patent, and persuasive of what the rest of the world ought to think."

Coming specifically to the claims in question, we think that both claims 2 and 5 are valid, and that, as the invention was a meritorious one and "substantially advanced the art," the patent is entitled to liberal treatment and its claims are to be liberally construed. Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U. S. 45, 63, 43 S. Ct. 322, 67 L. Ed. 523.

It is said that the fifth claim is too broad and is anticipated by the Witherell patent. We do not think so. The Witherell patent covers a weighing device of the jack type for ascertaining the wheel load on vehicles of the old type such as wagons. It not only is not suited for use with automobile trucks, but nothing about it would suggest such a device as that covered by the patent here. It is said, also, that the language of the claim is not limited to a device for weighing the wheels of motor vehicles. The device is described, however, as a "bearing pressure meter for roads," which in view of modern conditions would seem to negative the idea that anything except a device for weighing motor vehicles was intended. Furthermore, it is elementary that the language of the claims is to be construed in the light of the description and drawings. Hogg v. Emerson, 11 How. 587, 13 L. Ed. 824; Wicke v.

Ostrum, supra, 103 U. S. 461, 468, 26 L. Ed. 409; Jones v. Evans (C. C. A. 7th) 215 F. 586. And, when so construed, there can be no question that the language used refers to a device for ascertaining the wheel load on motor vehicles and not to such devices as that covered by the Witherell patent. While it is true that courts will not ordinarily interpret a positively recited generic expression as limited to the precise instrumentality disclosed by the patent, they will do even this where such narrow interpretation is necessary to distinguish the claim from the prior art and uphold the validity of the claim. International Banding Mach. Co. v. American Bander Co. (C. C. A. 2d) 9 F.(2d) 606, 608.

And we think, also, that both claims 2 and 5 are infringed by the scale of the defendant. It is objected as to claim 2 that it specifies a "resilient" member, whereas the scale of defendant has no "resilient" member. Complainants, on the other hand, contend that the weighing device used in defendant's scale is "resilient," in that it is so constructed that it has the "power of springing back to a former position." It is not necessary, however, that we follow counsel in their definitions of "resiliency," or in the fine distinctions which they seek to draw between a mechanism resilient as a whole and a mechanism composed of a substance "inherently resilient." The rights of the parties depend upon no such verbal niceties. As stated above, the invention was a meritorious one which substantially advanced the art. In such case it is well settled that the patentee is entitled to have his patent liberally construed and to invoke the doctrine of equivalents. As we said in the case of Frick Co. v. Lindsay, 27 F.(2d) 59, 62: "While the patent of complainant is not a basic or pioneer patent, this does not mean that it is not entitled to invoke the doctrine of equivalents. The range of equivalents, it is true, depends upon the extent and nature of the invention, and if the invention is broad and primary in character, the range of equivalents will be correspondingly broad; but, where the patent is for a mere improvement, a narrower range of equivalents will be applied. Paper Bag Patent Case, 210 U. S. 405, 415, 28 S. Ct. 748, 52 L. Ed. 1122. Any patent, however, has some range of equivalents, unless form is made the indispensable thing. And the rule is especially applicable where the infringer takes the whole gist of the invention, as in this case. U. S. Slicing Mach. Co. v. Wolf, Sayer & Heller (D. C.) 249 F. 245, 247; Id. (C. C. A. 7th) 261 F. 195."

There can be no question that the weighing device in defendant's scale is the equivalent of that used in the scale of the patent. As said by Judge Coxe in Kenney Mfg. Co. v. J. L. Mott Iron Works (C. C.) 137 F. 431, 433, "The interchangeable use of weights and springs is the stock illustration for equivalents." And see Ruud Mfg. Co. v. Beler Water Heater Co. (C. C. A. 2d) 229 F. 995. No claim is made that the weighing device of the patented scale was itself patentable. Troll used an old and well-known weighing device, and the infringing scale substitutes for this a device equally well known.

We do not think, however, that the fifteenth claim is valid. It could not constitute patentable invention to use two or more scales at a time instead of one. As to the contention that because of the rigidity of the axle of a motor vehicle, correct weight could not be obtained unless it was substantially level at the time, the answer is that leveling an axle by putting an object under one of the wheels manifestly does not rise to the dignity of invention.

For the reasons stated, we think that both the second and fifth claims were valid and infringed, and that the decree in favor of defendant was erroneous, and same is accordingly reversed.

Reversed.

WADDILL, Circuit Judge, presided at the hearing of this case and concurred in the conclusion reached, but, owing to illness, did not participate in the preparation of the opinion.