## VICTOR COOLER DOOR CO., Inc., et al. v. JAMISON COLD STORAGE DOOR CO.

### No. 3032.

Circuit Court of Appeals, Fourth Circuit.

Oct. 21. 1930.

William F. Hall, of Washington, D. C. (Alexander Armstrong and Omer T. Kaylor, both of Hagerstown, Md., on the brief), for appellants.

Eugene G. Mason, of Washington, D. C., and Charles Markell, of Baltimore, Md. (Charles L. Sturtevant, of Washington, D. C., on the brief), for appellee.

Before PARKER and NORTHCOTT, Circuit Judges, and ERNEST F. COCHRAN, District Judge.

PARKER, Circuit Judge.

This suit was instituted in the court below by the Jamison Cold Storage Door Company, hereafter referred to as complainant, against the Victor Cooler Door Company, referred to as defendant, to enjoin infringement of patents Nos. 1,099,626 and 1,208,042, issued to one Stevenson, and for an accounting of profits and damages. The first of these patents covers a latch or fastener for use on heavy doors such as those of refrigerators; the second covers a closure unit for use in a refrigerator, or other room where the temperature is maintained at a degree different from that of the surrounding atmosphere, consisting of an inner door or doors which automatically close and an outer door equipped with an automatic latch which is opened when the inner door is pushed against it. Com-

plainant claims that defendant is engaged in the manufacture and sale of a closure unit consisting of doors in a frame, the outer door being equipped with a latch which infringes its first patent, and the whole being constructed in such way as to infringe its second patent. The defendant denies infringement and denies that either of the patents is valid. The District Judge held both patents valid and infringed; and from a decree in favor of complainant, defendant has appealed. The opinion of the court below will be found in 38 F.(2d) 490.

The latch or fastener covered by complainant's first patent is to be attached to a door and is engaged by a keeper attached to the door facing. The latch proper is rigidly attached to one end of a short shaft, at the other end of which is rigidly attached a handle or lever. Around the shaft and attached to it is a spiral spring, the force of which tends to push the latch proper downward into locking position. The latch is released from outside the door by pulling the lever in the direction in which the door opens. It is equipped with a push rod, extending through the door and connected with the lever, and can be released from inside the door by pressing against this push rod. A better understanding of its nature and operation will be gained from an examination of the drawing describing it, which we hereto attach.

The only claim of this first patent upon which complainant relies is claim 1, which is as follows: "1. In a fastener for doors, the combination of a latch for holding the door closed, a spring for normally throwing the latch to locking position, and means for releasing said latch, including a swinging lever on one side of said door, a push rod extending through the door, and connected to said lever, and devices for connecting the lever to the latch, whereby the movement of the lever in the direction for opening the door, will release the latch."

Defendant's latch consists of a latch bar on the door engaged by a keeper on the facing. It is forced downward into the keeper by a spring from above and is raised by a handle or lever. This lever is pivoted and a short arm extends from it beneath the latch bar. The latch is raised from outside the door by pulling the lever in the direction in which the door opens. It is raised from inside the door by pressing against a bar which, in turn, presses against a push rod which extends through the door and presses against but is not attached to the lever on the outside. In operation, it differs from complainant's latch in that the latch bar cannot be pushed down in the keeper by pressing against the lever from the outside or by pulling the push bar from within. This difference arises because the lever is not rigidly attached to the latch bar and the push rod is not attached to the lever as in complainant's patent. The following drawings illustrate its construction and operation:

Fig. 1.

Complainant contends that the claim of his patent upon which he relies covers a swinging lever for releasing the latch bar, and not merely one rigidly attached thereto, and a push rod having connection with the lever by mere contact, and not necessarily one fastened to it. Defendant, on the other hand, contends that the language of the claim must be construed in the light of the specification and drawings, which provide for a lever rigidly attached to the latch bar and for a push rod fastened to the lever, and that when so construed complainant's patent is not infringed by the mechanism used by defendant.

We think that defendant's contention is correct. It is elementary that the language of the claims is to be construed in the light of the specification and drawings. Hogg v. Emerson, 11 How. 587, 13 L. Ed. 824; Wicke v. Ostrum, 103 U. S. 461, 468, 26 L. Ed. 409; Jones v. Evans (C. C. A. 7th) 215 F. 586; Black & Decker Mfg. Co. v. Baltimore Truck Tire Service Corp. (C. C. A. 4th) 40 F.(2d) 910, 914. Furthermore, the patent in question is not a basic or pioneer patent, but is one for a mere improvement in a crowded art, and as such is not entitled to a liberal construction, but must be practically limited to the means shown by the invention. Computing Scale Co. v. Automatic Scale Co., 204 U. S. 609, 27 S. Ct. 307, 51 L. Ed. 645; Weber Electric Co. v. E. H. Freeman Electric Co., 256 U. S. 668, 676, 41 S. Ct. 600, 65 L. Ed. 1162. The specification thus describes the attachment of the lever to the latch bar: "For releasing purposes, the shaft 3, supporting the latch is swung in the opposite direction by a lever 14, which is rigidly secured to the shaft by a pin 14." And the fastening of the push rod to the lever is thus described: "The rod 17, carries a cross pin 20, on which are mounted rollers 21, which engage the curved slots formed in the side walls of the arm or lever 14." In view of the state of the prior art, to which we shall hereafter refer, the claim must be held limited to this particular device in order that the validity of the patent may be upheld. Black & Decker Mfg. Co. v. Baltimore Truck Tire Service Corp., supra; Banding Mach. Co. v. American Bander Co. (C. C. A. 2d) 9 F.(2d) 606, 608; Duff v. Sterling Pump Co., 107 U. S. 636, 639, 2 S. Ct. 487, 27 L. Ed. 517; Boyd v. Janesville Tool Co., 158 U. S. 260, 261, 15 S. Ct. 837, 39 L. Ed. 973. When so limited it is clear that it is not infringed by the latch of defendant.

If the claim be given the construction contended for by complainant, and held to cover any device whereby a lever for releasing a latch bar of the kind used by complainant is operated by a push bar extending through the door, it is unquestionably void because of anticipation. The exterior mechanism of complainant's latch, except as to the connection of the push bar extending through the door, is anticipated by the device of the Jones patent No. 1,046,072, which, so far as its exterior mechanism is concerned, is in all respects similar. Complainant's patent merely adds to the Jones patent the feature of the push bar extending through the door and attached to the lever; and, except for the attachment to the lever, there is nothing new in using a push bar extending through a door for operating the lever and releasing the latch. Such a device was shown in the pat-

ents to Millard, 517,353, and Dodge, 723,846, which operate on exactly the same principle as the push bar of complainant's patent and push out the releasing lever in exactly the same way. It was also shown in patents to Feucht, 916,545, Waldecker, 930,000, Sharp, 128,075, and Unger, 204,267, which operate on substantially the same principle. Drawings showing the operation of the push bar in the Dodge and Millard patents are as follows:

that this does not constitute invention. Walker on Patents (6th Ed.) vol. 1, 84 and 92; Grinnell Washing Machine Co. v. E. E. Johnson Co., 247 U. S. 426, 38 S. Ct. 547, 62 L. Ed. 1196; Palmer v. Corning, 156 U. S. 342, 15 S. Ct. 381, 39 L. Ed. 445; Hall v. Macneale, 107 U. S. 90, 2 S. Ct. 73, 27 L. Ed. 367; Heald v. Rice, 104 U. S. 737, 755, 26 L. Ed. 910; Hailes v. Van Wormer, 20 Wall. 353, 22 S. Ct. 241; Stimpson v. Woodman, 10 Wall. 117, 19 L. Ed. 866.

Push-bar

Dodge
Latch Mechanism

Millard
Latch

Push-bar

Plate 2.

We do not think that it constituted patentable invention to equip the Jones latch with the Dodge push bar. The resulting latch is not a combination producing a new and useful result but a mere aggregation in which old devices are brought together and each allowed to work out its own effect. The outside mechanism works exactly as it did in the Jones patent. The push bar releases the latch by pushing out the lever, exactly as it did in the Dodge and Millard patents. It is clear

In Heald v. Rice, supra, the patent in suit covered a certain previously known straw-feeding attachment in combination with a certain previously known return flue boiler, the straw-feeding attachment having been previously combined with a fire box boiler. Notwithstanding that the utility of the return flue boiler in that combination was greater than when used with the fire box boiler, the Supreme Court held there was no invention in the combination. Mr. Justice

Matthews, writing the opinion of the court, used the following language, which is peculiarly pertinent here: "The case would not be altered if we suppose that at the date of Morey's patent there had been also a valid patent outstanding in a stranger for the return-flue boiler. On that supposition, could it for a moment be contended that Rice could secure for himself a valid patent for the combination as an improvement on both? What invention could he claim? He uses Morey's device precisely as Morey's patent contemplated, and the Cornish boiler exactly as it was designed it should be used. And in the combination each operates separately, producing its own results. There was no inventive resource drawn upon to bring them together. Could not the owners of the patents for the straw-feeding attachment and the return-flue boiler unite their machines and work them together, in defiance of a claim for the combination? To ask the question is to answer it."

■ The rule applicable is thus well stated in the oft-quoted passage from Hailes v. Van Wormer, supra, 20 Wall. 353, 368, 22 L. Ed. 241: "It must be conceded that a new combination, if it produces new and useful results, is patentable, though all the constituents of the combination were well known and in common use before the combination was made. But the results must be a product of the combination, and not a mere aggregate of several results each the complete product of one of the combined elements. Combined results are not necessarily a novel result, nor are they an old result obtained in a new and improved manner. Merely bringing old devices into juxtaposition, and there allowing each to work out its own effect without the production of something novel, is not invention. No one by bringing together several old devices without producing a new and useful result the joint product of the elements of the combination and something more than an aggregate of old results, can acquire a right to prevent others from using the same devices, either singly or in other combinations, or, even if a new and useful result is obtained, can prevent others from using some of the devices, omitting others, in combination."

And the criterion for distinguishing between patentable combination and mere aggregation is thus tersely stated by Mr. Justice Brown in Richards v. Chase Elevator Company, 158 U. S. 299, 302, 15 S. Ct. 831, 833, 39 L. Ed. 991: "Unless the combination accomplishes some new result, the mere multiplicity of elements does not make it patentable. So long as each element performs some old and well-known function, the result is not a patentable combination, but an aggregation of elements."

■ Our conclusion, therefore, as to complainant's first patent is that it is valid only if it be construed as limited to a latch the lever of which is fastened to the push bar, as shown in the specification and drawings, and that, when so construed it is not infringed by the latch of defendant, which does not embrace this feature.

Complainant's second patent covers an outer door equipped with a latch like that described in its first patent, which will be released by pressure against the push bar, and a self-closing inner door swung in the same frame, so that, when pushed outward, it will strike a bar attached to the outer door, which in turn will strike the push bar and release the latch, and thus enable the inner door to open the outer door. In other words, it consists of an outer door equipped with some type of the well known "panic bar" and an inner door swung in the same frame, so that when pushed towards the outer door it will release the latch and open it. Claim 2 of the patent, which is typical, is as follows: "2. A closure for a compartment having an opening, comprising an outer door hinged to close the outer side of the opening, an automatic fastener for such door, an inner auxiliary door hinged in the opening independently of the outer cover, means for yieldingly closing said auxiliary door across the opening independently of the position of the outer door, and a movable element connected to actuate the fastener on the outer door and adapted to be operated by the auxiliary door when the latter is opened outward."

We think that this patent was clearly lacking in patentable invention. The panic bar and self-releasing latch on the outer door were old. It was old to swing self-closing doors in the same frame as the outer door. And it was old, also, to swing an inner door in connection with an outer door, so that pressure against the former would open both, as shown by the Carroll patent, No. 815,334. It is true that in the case of the Carroll patent, which was for fire exit doors, the doors are joined so that both must be opened together; but we do not think there was patentable novelty in swinging the inner door in the frame independently of the outer door.

Self-closing inner doors swung in the same frame with an outer door were well known, not only for use with refrigerators, but also in connection with other structures. It re-

quired no invention to equip the outer door with some well-known type of panic bar. Or looking at the matter from another angle, it required no invention to swing self-closing inner doors in a frame with an outer door equipped with a panic bar and automatic latch such as that described in complainant's first patent. The fact that such doors, if hung in close proximity to an outer door so equipped, would cause it to open when they were pushed against it, was a perfectly obvious matter and, as suggested by counsel, it was no more patentable invention to equip the outer door with a panic bar than it would have been to place an automatic light switch where it would be operated by the opening and closing of the doors.

Under the authorities which we have cited in connection with the first patent, the bringing together of the inner doors and the panic bar on the outer door was but aggregation of old devices in which each performed its old function. It is argued that a new function of the inner door resulted from its striking against the panic bar and causing the outer door to open. But, as stated above, this was an obvious matter and not patentable as an invention. The function of the panic bar is to release the latch and cause the door to open when there is pressure against it. The fact that this pressure might be exerted by a door swung so near the outer door that it would strike against it when pushed outward did not require the exercise of the inventive faculty.

What Stevenson did was merely to apply the panic bar to a new use, viz., to install it on the outer door of a refrigerator where it would be struck by the inner door when the latter was pushed outward. The patentee of the panic bar, so long as the patent was alive, or the public after its expiration, was entitled to all the uses to which it might be put, whether he conceived the idea of the use or not. Roberts v. Ryer, 91 U. S. 150, 157, 23 L. Ed. 267. The case here falls squarely within the rule laid down by Chief Justice Taft, then a Circuit Judge, in Frederick R. Stearns & Co. v. Russell (C. C. A. 6th) 85 F. 218, 226, as follows: "It has long been settled that a mere use or function is not the subject of a patent, and also that 'the inventor of a machine is entitled to the benefit of all the uses to which it can be put, no matter whether he conceived the idea of the use or not.' Roberts v. Ryer, 91 U. S. 150, 157 [23 L. Ed. 267]; Goshen Sweeper Co. v. Bissell Carpet-Sweeper Co., 37 U. S. App. 555, 19 C. C. A. 13, and 72 F. 67, and cases there cited. It

would seem to follow as a corollary to these two propositions that, where it requires substantially no change in the old device to adapt it to the new use, such adaptation cannot be the subject of a patent, no matter how remote and unthought of the new use may be, provided no new force or mode of application be necessary in carrying on such use; otherwise, in case the device has been patented, the right of monopoly of the prior patentee is invaded by excluding him from a use of a machine which, by the rule stated and the authorities cited above, he is entitled exclusively to enjoy. If, however, the adaptation of the old machine to the new use involves a change in its form or operation, it may, by the changes and very newness of the use or function, become either a new machine or an improvement on the old machine, and be patentable as such; or the new use of the old machine may result in a new product, which is itself patentable; or the use may be a step in a new and patentable process. The general rule, however, is stated by Mr. Justice Gray, in delivering the judgment of the supreme court, in Pennsylvania R. Co. v. Locomotive Engine Safety Truck Co., 110 U. S. 490, 494, 4 S. Ct. 220 [28 L. Ed. 222], as follows: 'It is settled by many decisions of this court, which it is unnecessary to quote from or refer to in detail, that the application of an old process or machine to a similar or analogous subject, with no change in the manner of application, and no result substantially distinct in its nature, will not sustain a patent, even if the new form of result has not before been contemplated.' "

A case directly in point is Stimpson v. Woodman, 10 Wall. 117, 19 L. Ed. 866, which involved a patent for a machine for pebbling leather. A prior machine had used a roller for compressing leather, but the pebbled surface was produced by a figured hand roller. The Supreme Court held that it did not constitute invention to put the figures of the hand roller on the roller of the compressor. Here the bringing together of the old inner doors and the old panic bar on the outer door, so that one push on the inner door will open both doors, is no more than bringing together the pebbled surface of the hand roller with the pressure of the compression roller so that in one operation the leather was both compressed and pebbled.

In Heald v. Rice, supra, the use of the straw-feeding device in combination with the return flue boiler was held not patentable, even though the utility of the boiler was greater in the new combination. The same

principle applies in using the panic bar on an outer door of a combination of outer and inner doors, even though the utility of the combination of doors is greater as a result of using it.

Sargent v. Hall Safe & Lock Co., 114 U. S. 63, 5 S. Ct. 1021, 1029, 29 L. Ed. 67, involved a patent for a combination lock for safes with a time movement for controlling the release of the lock. Such time movements had been used in the prior art in connection with key locks. In holding the patent invalid, the court said, quoting with approval the opinion of the Board of Examiners: "Nor, so far as we see, has any invention been exercised. The time-movement was originally invented to prevent locks from being prematurely unlocked, and, when once the combination had been invented, it is obvious that it was as applicable to one form of locks as to another; and, to grant a patent for the union of the time-movement with every old form of lock, or with every new form which might appear, would manifestly place unjust restrictions on the original invention and defeat the very purpose of the law."

The case at bar comes to this, that complainant seeks to sustain his patent because he has used the pressure releasing latch, or panic bar, with a special well known type of refrigeration closure, an outer door swung in the same frame as inner doors. Under the doctrine of the case last cited, it is clear that this is not patentable. As said by Judge Brown in Robinson v. Tubular Woven Fabric Co. (D. C.) 248 F. 526, 542: "If the thing is old, and is applied to perform its old functions, it remains in the prior art, and cannot be made novel, in the sense of the patent law, merely because used in new surroundings that do not affect its character or mode of operation." See, also, Hall v. Macneale, 107 U. S. 90, 2 S. Ct. 73, 27 L. Ed. 367; Blake v. San Francisco, 113 U. S. 679, 682, 5 S. Ct. 692, 28 L. Ed. 1070; Thatcher Heating Co. v. Burtis, 121 U. S. 286, 7 S. Ct. 1034, 30 L. Ed. 942; Aron v. Manhattan Railway Co., 132 U. S. 84, 10 S. Ct. 24, 33 L. Ed. 272; Campbell v. Mangle (C. C. A. 9th) 194 F. 110; Hug v. Lakewood Engineering Co. (C. C. A. 6th) 7 F.(2d) 98; Ford Motor Co. v. Parks & Bohne (C. C. A. 8th) 21 F.(2d) 943, 950; Application of Ludwick, 55 App. D. C. 292, 4 F.(2d) 959.

Our conclusion is that the second patent relied on is void for lack of patentable novelty, and that the first patent is not infringed when construed as it must be so as to have any validity whatever. It follows that the decree of the District Court is erroneous, and same will accordingly be reversed.

Reversed.