## WHEELING STAMPING CO. et al. v. STANDARD CAP & MOLDING CO.

### No. 5446.

Circuit Court of Appeals, Fourth Circuit.
May 2, 1946.

William H. Parmelee, of Pittsburgh, Pa. (Edward A. Smith, of Baltimore, Md., and Christy, Parmelee & Strickland and Eiffel B. Gale, all of Pittsburgh, Pa., on the brief), for appellants.

Roger T. McLean and Dean S. Edmonds, both of New York City (Harry N. Baetjer, of Baltimore, Md., and Pennie, Edmonds, Morton & Barrows, of New York City, on the brief), for appellee.

DOBIE, Circuit Judge.

This is a civil action for damages based upon alleged infringement of three patents. The earliest of these three patents in suit is the Rahm patent, No. 1,944,571, issued in 1934; next are the Scott patent, No. 2,-226,326, and the Webb patent, No. 2,225,-672, both issued in 1940. The claim of plaintiffs is that these patents are infringed by the defendant's Stokes machine. The field of all these machines embraces means for removing from molding machines, after the completion of the molding operation, threaded caps or vials.

The claims in suit are Claims 1 and 2 of the Rahm patent, Claims 8, 11, 13 and 17 of the Scott patent and Claim 14 of the Webb patent. Claim 1 of Rahm reads: "In combination with a molding machine of the class described adapted to form a threaded portion in the object to be molded, of a thread forming member mounted and adapted to be rotated in a fixed plane, and means mounted and incorporated in the molding machine for unscrewing the thread forming member from the molded object and ejecting the same from the mold."

With the exception that it relates to a plurality of simultaneous molding operations, Claim 2 is quite similar to Claim 1. Claim 8, the vital one, of Scott, reads: "In a molding machine of the character described, the combination of separable molds for molding products therebetween with screw threaded connections between said products and a mold, means for unscrewing the products from the molds, and means for moving the unscrewing means into the space between said molds after separation for engaging the products to remove the same."

Claim 14 of Webb reads: "In a molding machine of the character described, the combination of a plurality of separable molds arranged in a plurality of parallel rows for molding a plurality of separate products therebetween with a screw thread-ed connection between each product and a mold, movable means constructed to engage a single row only of the products at a time normally positioned to one side of the separable molds and adapted to be progressively moved to successive rows of said products, and means for progressively moving said last-named means across the space between said molds after separation thereof for engaging successive rows of the products to remove the same."

The District Court held that the Stokes machine did not infringe either the Rahm, Scott or Webb patents, and entered a decree dismissing the complaint. Plaintiffs have duly appealed.

■ We start our consideration of this case in the light of four principles which we regard as quite important. (1) We agree with the District Court that not a single one of the patents in suit is a pioneer patent. Quite the contrary. So the claims in suit must be narrowly and not broadly interpreted. Connecticut Paper Products v. New York Paper Co., 4 Cir., 127 F.2d 423. (2) There can be no patent on a function or result, but only on a distinctive means of accomplishing this result. Westinghouse v. Power Brake Co., 170 U.S. 537, 568, 569, 18 S.Ct. 707, 42 L.Ed. 1136. As Judge Parker, speaking for this Court, said in Demco v. Doughnut Machine Corporation, 4 Cir., 62 F.2d 23, 24, 25: "Plaintiff is entitled to protection against machines which substantially copy the machines which they invented, by doing the same thing in substantially the same way, but not against machines which proceed in a different principle, even though they accomplish the same result." (3) The claims of the patents in suit must be interpreted not literally in vacuo, but rather in the light of the specifications. Victor Cooler Door Co. v. Jamison Cold Storage Co., 4 Cir., 44 F.2d 288, 291; Scott and Williams v. Whisnant, 4 Cir., 126 F.2d 19, 20. (4) The patents in suit are at least quasi paper patents, with an utter lack of any commercial success. Neither Rahm nor Scott has ever even been operated commercially; only one Webb machine has ever operated and that in a highly restricted field, outside threads on glass vials.

The Scott and Webb patents, which will be discussed later, do not give us grave concern. Whether Stokes infringes Rahm, however, we think, presents a problem of some difficulty.

■ What, then, are the distinguishing features between Rahm and Stokes? Are these material and controlling on the question of infringement or are they merely inconsequential and lacking in genuine substance? If the latter, Stokes cannot, of course, escape infringement, merely because this is what is often called imperfect infringement.

■ Now as to the Rahm patent. The broad idea of unscrewing a screwed object by holding the threaded object rigid and rotating the thread forming device is very old and clearly covered by the prior art. See Gary's patent, No. 590,145, issued 1897, Martindell's patent, No. 1,875,071, issued 1932, Roussell's French patent, No. 523,976, issued 1921. Apart from his very broad claims, Rahm's distinctive contribution was to apply this principle to molded resin caps, removing them completely in a single operation by the sole use of the thread-forming device, without moving away any of the mold plates, it being necessary merely to separate these plates by lowering or raising one of them.

Again and again the Rahm patent emphasizes as one of its cardinal features that it avoids "the necessity of removing the mold, or a part of the same, from the press." The advantages of this simpler procedure are, of course, obvious. In Stokes, the removal of one of the mold plates plays an essential part in the removal of the caps. Rahm is thus in the nature of a single-step device, in which the parts of the mold are manipulated to cause the molded caps to drop by gravity into a pan inserted between the mold-plates. In Stokes a two-step procedure is employed, the threading device merely loosening the caps, which are later knocked off by the rigidly positioned rubber fingers affixed to the lower mold-plate as this plate is laterally moved completely out of the molding machine.

Rahm uses a three-plate mold which is essential to its operation; while Stokes employs a two-part mold. In Rahm the cap is held against rotation by the upper mold-plat; in Stokes this is done by the lower plate. Rahm produces a cap with a flange at the top, which facilitates unscrewing the cap from the article to which the cap is attached; Stokes produces a cap with a rounded top, without any flange.

In the Rahm three-part mold, there is a lower part which moves downward to open the mold. There are also two upper

parts, one a rod with a threaded end upon which is formed the thread of the molded cap; the other, a cup or annulus, through which extends the threaded rod, holds the molded part against rotation, then the rotation of the rod serves to screw the molded cap off the thread of the rod, and out of the cup, when the cap drops by gravity.

Stokes involves a multiplicity of upper mold-parts with a screw-threaded projection in each, and a corresponding number of lower mold-parts. Each pair of co-operating mold-parts form together a cavity and in this cavity the cap is molded. Simultaneous rotation on their axes of the upper mold-parts partially (but not completely) unscrews the molded caps, which are held against rotation by the lower mold-parts. During this unscrewing operation, the downward movement of the lower mold-parts must correspond precisely with the like movement of the caps. Accurate timing in this procedure is essential to prevent injury to the caps or damage to the machine.

In the Stokes machine after the caps have been loosened, the lower mold-plate is laterally moved completely out of the press to a loading station for a new supply of resin pellets. This lateral motion of the lower mold-plate brings the rubber wipers or fingers, thereto rigidly attached, into frictional contact with the loosened caps and effects their complete release from the threaded projections on the upper mold-plate. Rahm operates the thread-forming device in connection with a sleeve or collar. In Stokes this sleeve or collar is absent, the lower mold-plate being used to serve the purpose of Rahm's sleeve or collar.

While each of these differences between Rahm and Stokes, when considered alone and apart, may appear somewhat slender, we think, taken all together in their totality, they do constitute a variation between the two machines that is both substantial and material. We must, therefore, agree on this point with the District Court.

The Scott and Webb patents do not employ the thread-forming device to dislodge the caps; they do not involve the moving away of any of the heavy mold-plates, merely their separation by lowering or raising one of these plates; and the entire dislodging operation is accomplished by moving a motor-driven external frictional device in between the separated mold-plates. Scott employs chucks which grip and unscrew the caps and the ejecting mechanism is then moved laterally out of the press and the molded caps are pushed out of the chucks; Webb uses a motor driven belt which is moved laterally into the space between the mold-plates and unscrews the caps only one row at a time and thus must be moved from row to row of the caps. Neither Scott nor Webb plays any part in molding the caps, they are both machines designed solely for unscrewing and removing the caps. Further, though they may be physically attached to the molding machine, each remains a separate contrivance. Apart from the very broad principle of the application of friction to the caps to effect their removal, which is surely not patentable, they have little in common with Stokes, which partially unscrews the caps by the thread-forming device, then knocks them off by the rubber fingers attached to the lower mold-plate when this plate is laterally moved out of the machine. Scott and Webb require no removal of the mold-plate, but solely a space between the plates into which the machine is placed and in which it operates.

Our conclusion, then, is that Stokes is not an infringement of either the Rahm, the Scott or the Webb patent. We must, therefore, affirm the judgment of the District Court in dismissing the complaint of the plaintiffs.

Affirmed.