**SMITH et al. v. GENERAL FOUNDRY MACH. CO., Inc., et al.**

**No. 5840.**

United States Court of Appeals
Fourth Circuit.

May 6, 1949.

148

W. Brown Morton, of New York City (Jesse A. Jones, of Kinston, N. C., Pennie, Edmonds, Morton & Barrows, of New York City, and Frank H. Kennedy, of Charlotte, N. C., on the brief), for appellants.

Warley L. Parrott, of Charlotte, N. C., and Lycurgus R. Varser, of Lumberton, N. C. (Channing L. Richards, of Charlotte, N. C., on the brief), for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This appeal was taken from a summary judgment based upon the pleadings, affidavits and admissions filed by the parties whereby the District Court, finding no material issue of fact, held that the defendants had not infringed United States patent No. 1,811,980 for drying house granted to Forrest H. Smith on June 30, 1931, or United States patent No. 2,051,348 for drying house issued to Forrest H. Smith on August 18, 1936.

The patents relate to tobacco barns for curing tobacco and describe improvements upon the long used system whereby tobacco, hung on sticks in the barn or drying house, was subjected to heat radiated from metal flues located on the floor of the barn, through which hot air and gases were conducted from a wood furnace, which was fired from outside the building. Speaking of this sort of equipment and of his improved method, the patentee made the following statement at the outset of his specifications of the first patent in suit:

"Most of such drying structures are provided with a flue or plurality of flues which are located within the structure and which are heated by a central heating furnace which may be of either the coal, wood or oil fired variety. In such installations wherein a central furnace is used, the gases passing from the furnace and through the flues become cooled on account of the radiation of the heat from the flue or flues so that flues relatively far removed from the furnace will be cool as compared to those flues which are immediately adjacent to the furnace. This inequality of flue temperature tends to produce different drying temperatures in different parts of the drying house. * * *

"According to the present invention this disadvantage is largely overcome through the provision of flues located within the drying house and individual burners for heating the flues which are respectively located at various points within the drying house."

By this invention the tobacco curing installation previously used is modified by doing away with the furnaces for heating the flues and instead the flues are heated directly by means of oil burners placed beneath openings in the bottom wall of the flues whereby the products of combustion pass directly into the flues, and the flues serve to shield the tobacco from direct radiation or heat from the burners. The result is that loss of heat from the furnace is avoided, a better distribution and regulation of the heat is secured, and the number of burners can be varied to provide the required heat for a barn of any size.

The plurality of burners used in the system is illustrated by a diagrammatic drawing in the specifications in which are depicted twelve burners spaced apart and located beneath a flue adjacent to the walls

of the building and three additional burners located beneath a flue which traverses the center of the building.

The plaintiff relies on claims 1, 2 and 3 of this patent, of which claim 1 is fairly representative. It is as follows: "1. In a drying house, the combination with a substantially horizontal flue extending adjacent to and inside of the walls of said house; of a plurality of spaced openings in the bottom of said flue; a fluid fuel burner positioned under each of said openings; and means for supplying fluid fuel to said burners."

It is noteworthy that novelty is not claimed for the use of oil burners inside the barn for it is admitted that such oil burning systems had been offered to the public prior to the first patent in suit, for example, the Reynolds patent No. 1,509,902 which was cited in Florence-Mayo-Nuway Co. v. Hardy, 4 Cir., 168 F.2d 778, 781, to which the plaintiff refers, and also in the file wrapper of the abandoned application for reissue of the second patent in suit which is included in the record on this appeal.

The second patent was conceived by the patentee shortly after he filed his application for the first, and was designed as an improvement thereof. It is directed in the main to open flame burners whereby the flues are dispensed with altogether while the number and disposition of the burners are substantially the same as in the first patent, with an added improvement hereinafter described. The defendant does not use open flame burners and does not infringe any of the claims in which these are described. Claim 3 of the patent, however, describes a conduit or flue system similar to that of the first patent with a specified improvement that consists of a boxing surrounding each heating unit which is supplied with an air intake and an air outlet whereby the air entering the flue may be regulated and the smoke and heated air are not admitted to the barn. The system of this patent, as described in claim 3, is substantially the same as that of the first patent with the addition of the boxing feature. Claim 3 is as follows: "3. The combination with a drying house including side walls and end walls, of a plurality of fuel burning heating units located within the house and arranged in series extending around adjacent to the walls thereof, an individual imperforate boxing surrounding each unit, a conduit extending along the walls of the house and connected to the respective boxings, each boxing having an air inlet, and an air outlet connected to the conduit and exhausting into the atmosphere outside the house."

The defendants' installation which is charged to infringe these patents consists of a flue system heated by two oil burners. Since the claims of the patents in suit specify a plurality of burners, it is conceded that the defendants' equipment which comprises only one oil burner does not infringe. The defendants' two oil burner system may be described as follows: Sheet metal flues are supported on the floor of the barn beneath the overhanging tobacco. A flue section extends alongside three walls of the barn. At its ends it is connected with shorter sections adjacent to the fourth wall of the barn and these in turn are connected by elbows to sections extending back across the mid portion of the barn to a point about the center. Each transverse section terminates in an iron elbow which has an opening in the bottom and is connected with an oil burner mounted beneath the opening so that the products of combustion are discharged directly into the flues.

The patentee, paraphrasing claim 1 of the first patent, contends that infringement is made out because the defendant's structure comprises a drying house with a substantially horizontal flue that extends adjacent to and inside the walls of the house with a plurality of spaced openings in the bottom of the flue under each of which a fuel burner is placed with means for supplying it with fuel; and it is said that it is immaterial that the defendant employs only two burners, while the patent drawings indicate that a much larger number is desirable, because the claims do not specify a particular number of burners but merely a plurality, and this term, which means more than one, is fulfilled in the defendant's installation. In re Dickerman, 18 C.C. P.A., Patents, 766, 44 F.2d 876, 878. Moreover, it is contended that infringement must be determined by considering the language

of the claims rather than the accompanying specifications and illustrative drawings; Fulton Co. v. Powers Regulator Co., 2 Cir., 263 F. 578; Smith v. Snow, 294 U.S. 1, 11, 55 S.Ct. 279, 79 L.Ed. 721; and that the claims should be liberally construed and their scope should be enlarged, as by resort to the doctrine of equivalents, if this be necessary to protect a meritorious contribution from misappropriation. City of Grafton v. Otis Elevator Co., 4 Cir., 166 F.2d 816, 821; Royal Typewriter Co. v. Remington Rand, Inc., 2 Cir., 168 F.2d 691.

■ On the other hand the defendant contends that the range of equivalents depends upon the extent and nature of the invention and that the claims of a patent must be interpreted in the light of the specifications. Miller v. Eagle Mfg. Co., 151 U.S. 186, 14 S.Ct. 310, 38 L.Ed. 121; Victor Cooler Door Co., Inc. v. Jamison Cold Storage Door Co., 4 Cir., 44 F.2d 288; Wheeling Stamping Co. v. Standard Cap & Molding Co., 4 Cir., 155 F.2d 6, certiorari denied 329 U.S. 764, 67 S.Ct. 125, 91 L.Ed. 658. The principles governing the question of infringement are well established and when they are applied to the facts of this case, it becomes clear that the defendant does not employ the system that the plaintiff has devised. This is so, not merely because the defendant uses only two instead of many burners, but because the defendant's arrangement is not intended to and does not effect the purpose which the patent structure was expressly designed to accomplish. We have seen that the prime purpose of the patent was to do away with a central heating system, with its loss of heat and lack of uniformity of temperature in various parts of the drying house, and to substitute a plurality of individual heating units spaced apart and variously located under the flue inside the warehouse so that the heat would be evenly distributed and easily controlled throughout the building. But the defendants have not abandoned the central heating system. It is true that they employ fuel burners inside the barn, as was shown in patents prior to those in suit, and that in the accused structure, two burners are employed; but these are centrally located side by side

where the two ends of the flue system are brought to the middle portion of the barn. There is no attempt to space the burners apart and to supply heat at various points so as to maintain a uniform temperature throughout. Only one and sometimes two burners, depending upon the size of the barn, are used, and these of necessity are of much greater power than the burners of the patent under its system of distributing the sources of heat throughout the building.

That this interpretation of the claims of the first patent in the light of the specifications is correct is supported by the interpretation which the patentee himself placed upon it when he was prosecuting an application for a reissue of his second patent in the Patent Office. That patent, it will be remembered, disclosed an improvement on the first, consisting, so far as claim 3 now in suit is concerned, of the boxing of the burners; but the essential feature, consisting of the abandonment of the central heating system and the distribution of the burners, was retained. In describing his system the patentee made the following statement which clearly demonstrates that the defendants do not infringe the first patent. He said:

"The secret of the problem, as stated above, is a plurality of small oil burning heaters which may be readily regulated to give a uniform generation of heat throughout the barn, combined with means for controlling the discharge and distribution of the heated products of combustion as well as the heated air throughout the space beneath the tobacco.

"This is not merely a matter of suiting the number of heaters to the size of the barn. A barn small enough to have just one heater of the kind used by the applicant would be too small to have any commercial value. It would be nothing more than a doll's house as compared to a real barn. The invention is really putting doll sized heaters in real barns in such numbers as to furnish the required heat, but at the same time so reduced the distance from the heater where the temperature is high as to avoid overheating of the tobacco and facilitate the distribution of the heated gases."

In contrast with this system the record on this appeal contains descriptions of two tobacco barns of substantial size maintained by the defendant Glover, as well as photographs, drawings and commercial advertisements of the heating equipment therein which was manufactured by the defendant General Foundry and Machine Company and sold to Glover by defendants trading as Farmer Brothers. This material clearly demonstrates that in the practical operation of the barns burners, of large size are used in a central heating system.

This discussion also shows that claim 3 of the second patent was not infringed. If the language of the claim is to be taken literally, it is plain that the defendants do not use a plurality of heat units in the building "arranged in series extending around adjacent to the walls thereof"; but it is more important that the defendants, as we have shown, are not using the heating system which the plaintiff devised. It is also clear that the defendants, in connecting the ends of their flue system to the burners by iron elbows, are following the early practice of connecting the flues with a central heating system rather than the boxing system of the second patent.

■ The plaintiff makes the additional point that there is no precedent in this court for disposing of a question of patent infringement by summary judgment. The practice, however, is not unknown and is properly adopted where as provided in Federal Rules of Civil Procedure, rule 56(c), 28 U.S.C.A., there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. See Frederick Hart & Co., Inc. v. Recordgraph Corp., 3 Cir., 169 F.2d 580; Allen v. Radio Corporation of America, D.C.Del., 47 F.Supp. 244; Rubinstein v. Silex Co., D.C.S.D.N.Y., 73 F.Supp. 336; S. R. Leon, Inc. v. Parfums Schiaparelli, Inc., D.C.S.D. N.Y., 35 F.Supp. 641; John T. McCoy, Inc. v. Schuster, D.C.S.D.N.Y., 44 F.Supp. 499; Brown v. Ford Motor Co., D.C.E.D.Mich., 57 F.Supp. 825; Juniper Mills, Inc. v. J. W. Landenberger & Co., D.C.E.D.Pa., 6 F.R.D. 463. We find that situation to prevail in the pending case.

Affirmed.