**INGERSOLL-RAND CO. et al. v. BLACK & DECKER MFG. CO.**

**No. 6261.**

United States Court of Appeals Fourth Circuit.

Argued Oct. 10, 1951.

Decided Nov. 5, 1951.

Stephen H. Philbin, New York City (Chester A. Adee, New York City, and Frank B. Ober, Baltimore, Md., on the brief), for appellants.

Albert R. Golrick, Cleveland, Ohio (Thomas W. Y. Clark, Baltimore, Md., on the brief), for appellee.

Before SOPER and DOBIE, Circuit Judges, and WYCHE, District Judge.

DOBIE, Circuit Judge.

This is a typical suit for patent infringement. The patent in question is United States Patent No. 2,012,916, August 27, 1935, issued to Robert H. Pott for an impact tool. Black & Decker Manufacturing Company, defendant here, put the accused device, an automatic wrench, upon the market in 1949. This was done after years of study by defendant's research department and after an opinion by competent patent attorneys that defendant's wrench did not infringe any prior patents. The District Judge, in an elaborate opinion, found the Pott patent invalid for lack of invention and found further that there was no infringement. The opinion below is reported in 94 F.Supp. 938. From a judgment dismissing the suit, plaintiffs have appealed to us.

Of the 18 claims of the patent in suit, those alleged to be infringed are claims 3, 4, 9, 15 and 16. For the purposes of this appeal, we are primarily concerned with claims 3 and 4, which read as follows:

"3. In a tool of the character described, the combination of two relatively movable members having complementary juxtaposed faces provided with releasable interengaging means constituting driving connections between said members under certain conditions of operation, said means being successively releasable and reengageable under other operative conditions, driving means connected with one of said members, and means for increasing the momentum

of the driven member over that imparted thereto by said driving means as said members move relatively into reengagement.

"4. In a tool of the character described, the combination of a driving member, a driven member, driving connections therebetween including cam means for effective relative separation of said members when movement of said driven member is resisted by a predetermined force and automatically re-engageable after release, a prime mover for said driving member, and driving connections between said prime mover and said driving member including means for accumulating energy as the result of resistance to rotation prior to relative separation of said members."

We also append the first four paragraphs of the specifications of this patent:

"The invention relates generally to impact tools and more particularly to tools of this character for applying a torsional force.

"An object of the invention is to provide a simple tool embodying a new and improved means for producing a succession of impacts of great force.

"A further object of the invention resides in the provision of an impact tool for imparting torsional force to a part engaged by the tool which embodies a novel means for increasing the force of the impact over the force delivered directly by a driving member.

"More specifically stated, an object is to provide, in a tool of this character, means for momentarily accumulating or storing up energy to be expended when the hammer part of the tool impacts the driven part or tool head."

██ It can readily be observed that claims 3 and 4 are phrased in broad, functional terms. In these 2 claims, the word "means" is used 7 times without any precise indication as to just what those "means" may be. If these two claims be broadly and liberally construed, we think they are clearly invalid. See Halliburton Oil Well Cementing Co. v. Walker, 329 U.S. 1, 12, 67 S.Ct. 6, 91 L.Ed. 3; United Carbon Co. v. Binney & Smith Co., 317 U.S. 228, 236, 63 S.Ct. 165, 87 L.Ed. 232;

General Electric Co. v. Wabash Appliance Corporation, 304 U.S. 364, 371, 58 S.Ct. 899, 82 L.Ed. 1402; Wheeling Stamping Co. v. Standard Cap & Molding Co., 4 Cir., 155 F.2d 6, 8. We think, however, that claims 3 and 4 must be rather narrowly interpreted in the light of the extended specifications. When so construed, we agree with the District Court that the claims are invalid for lack of invention in the light of the prior art.

An impact tool is a device for striking quick, repetitive, automatic, hammer-like blows to bring about an intended result— here the tightening of a nut on a bolt. When this operation is performed by the familiar hand wrench, a monkey-wrench, it is slow, fatiguing to the operator and it is difficult to tighten the nut when it becomes "seated"—that is, when its under surface is brought into contact with the upper surface of the object through which there is an upward projection of the bolt. The impact tool (automatic wrench) here in issue tightens the nut swiftly, efficiently and with very little strain on the operator. Of the practical utility of such a tool, there can be no question.

The Pott wrench is thus aptly and accurately described by the District Judge [94 F.Supp. 940]: "The illustrative drawings show what may be roughly described as a heavy and clumsy pistol consisting of a lower extended hand grip for the use of the operator (of itself not important in this case), a heavy cylindrical upper part corresponding roughly to the butt of an automatic pistol, with a forward cylindrical projection corresponding roughly to the barrel of the pistol. At the right end the tool is connected with the power to be supplied by an electric motor. Inside the barrel is a metallic spring rigidly attached at the right end to the power means and at the bottom also rigidly attached to what may be described as a rotary hammer cylindrical in form but of shallow depth which has at the bottom two angular or obliquely faced jaws (or teeth or lugs) which in one position interlock with similar angular jaws on another metallic cylindrical part of the tool, called the anvil. At the left end of the tool connected with

the anvil is a cap to fit over the nut. When the nut is being freely run down on the bolt (and until the nut becomes seated) the jaws of the hammer are interlocked or enmeshed or clutched into the corresponding angular jaws of the anvil. In this position the electrically rotated hammer and anvil are clutched together while turn-in the nut and running it down until it is seated. When the nut is seated its resistance to tightening causes a momentary separation between the only loosely interlocked surfaces of the anvil and hammer, in which the oblique jaws of the hammer ride or slip over the corresponding angular faces of the jaws of the anvil; and immediately thereafter the downward thrust of the torsion spring, energized by the rotary force supplied by the electric power, causes the hammer and anvil faces to again engage and interlock, the oblique jaws of the hammer striking glancing blows on the jaws of the anvil, and thus transmitting, by rapid repetitive blows, the force necessary for tightening the nut. In this operation the angular faces of the jaws of the hammer perform a 'camming' action. Pott also particularly stresses the thought that the energy stored up in the spring is released to drive the hammer ahead at a speed greater than the motor speed, thus increasing the force of the hammer blows on the anvil."

In the prior art, our attention is specifically directed to three patents: U. S. Nielson, No. 1,770,656, U. S. Scanlon, No. 1,-671,489, and Weibull (U. S. 1,776,057, Swedish 65,197, German 478,969, British 282,-641). Of these, Weibull clearly appears to be closest to the patent in suit. Oddly enough, according to the file wrapper of the Pott patent, none of these three patents was cited against Pott when his patent was under consideration in the Patent Office. We agree with the District Judge's observation: "If they had been, it would seem that patent claims 3 and 4 (of Pott) should not have been allowed, at least in such broad wording."

The essential elements of the Pott tool appear to be (1) a motor driving the shaft which acts on the (2) spring, which is connected not only with the shaft but also with

a rotating (3) hammer enmeshed by angular jaws with (4) an anvil, cylindrical in form like the hammer, provided with a projecting cap that fits over the nut (5) all of these assembed in a portable pistol-shaped device light and small enough to be manually operated. No new mechanical principle is here disclosed.

Thus, in Nielson, we find a rotary hammer connected in a flexible shaft to a source of power such as a motor, accumulating energy that acts on the hammer to impart, at the moment of impact, the maximum velocity to the striker block. Dr. Hoppman, witness for the defendant, testified quite convincingly of the hammer recoil, the energy storing and the hammer acceleration disclosed by Nielson.

Scanlon discloses the accumulation of energy when a torsion stem drives the hammer while the anvil shoulders and the shoulders of the hammer are both engaged. This accumulated energy is released upon the disengaging of these shoulders, which causes the hammer shoulders to rotate rapidly and strike the anvil shoulders. The twisted stem, in Scanlon, is the energy accumulating means for increasing the hammer's momentum.

Even closer to Pott are the Weibull patents relied upon heavily (and we believe correctly) by the District Judge. Here are very clearly shown the spring, the hammer, the anvil and the camming movement which serves to re-engage the hammer and the anvil. The Weibull hammer is driven rotatively by energy accumulating means through anvil-impacting cycles at a speed greater than the speed of the motor shaft. A tool, constructed according to the teaching of Weibull, with a rotatable anvil to use the tangential component, would seem to be quite capable of performing the function of running down a free nut. It is not without significance that Pott is strikingly silent as to specific degrees of impact, camming slope, spring strengths, hammer weights and hammer speeds; the precise determination of these factors "to obtain a succession of blows" is not disclosed. His teachings as to structure are hardly more detailed than those of Weibull.

We were favored, as was the District Judge, by viewing a motion picture showing (with the front of the device cut away for better vision and clearer understanding) the operation of a model made, it was alleged by defendant, according to, and in line with, the teachings of the Weibull patents. Counsel for plaintiffs, with commendable and engaging frankness, admitted the strong probative force of the moving picture if, but only if, the model was made strictly according to the disclosures of Weibull, which he forcibly denied.

On this point the District Judge observed: "But in this case I have had the advantage of viewing a motion picture showing the operation of a model made from the disclosures of the Weibull patent. It very convincingly demonstrated to me what I understand to be the operation of the Pott wrench. I am satisfied from the evidence that the model was fairly and correctly made by Mr. Brucker, a member of the Research Engineering Staff of the Black & Decker Company, and the motion pictures were made in the physical laboratory of the Johns Hopkins University under the supervision of Dr. Wm. H. Hoppman, Associate Professor of Mechanical Engineering there who, as a witness in this case, has more clearly explained the construction and operation of both the Pott and the Black & Decker automatic wrenches; and also even more particularly the principles disclosed by the three earlier patents which have been referred to." With this observation, we feel forced to agree.

We are impressed, too, by the testimony of Brucker as to the authenticity of the two Weibull models DX42 and DX46 which Brucker constructed and as to the disclosure in these models that the Weibull hammer does rotate the anvil in any use of the tool which would involve resistance to anvil turning such as would be met with in the operation of running down a nut.

Plaintiffs here can assert the validity of the Pott patent only upon the basis that it discloses a patentable "combination" as distinguished from a non-patentable "aggregation" of elements well known under the prior art. On this point, the Supreme Court has convincingly spoken through Mr. Justice Jackson in the recent (and very well known) case of Great Atlantic and Pacific Tea Co. v. Supermarket Equipment Corporation, 340 U.S. 147, 71 S.Ct. 127, 129, 95 L.Ed. 162:

"It is agreed that the key to patentability of a mechanical device that brings old factors into co-operation is presence or lack of invention. In course of time the profession came to employ the term 'combination' to imply its presence and the term 'aggregation' to signify its absence * * *. The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable. Elements may, of course, especially in chemistry or electronics, take on some new quality of function from being brought into concert, *but this is not a usual result of uniting elements old in mechanics. * * *

"Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements.* The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men. This patentee has added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly. * * * The defect that we find in this judgment is that a standard of invention appears to have been used that is less exacting than that required where a combination is made up entirely of old components." (Italics ours.)

A combination patent for a counter tray was there held invalid, despite the fact that it had been held valid by a District Court and a federal Court of Appeals, and in the face of the Supreme Court's admission: "That the resultant device works as

274

claimed, speeds the customer on his way, reduces checking costs for the merchant, has been widely adopted and successfully used, appear beyond dispute." Pott does not satisfy the high standard of invention set by this case for mechanical, combination patents.

We hold, then, that the Pott patent is invalid as a mere "aggregation" of old elements. Pott did not design the first portable, automatic nut runner. All that Pott really did was to assemble, in a clever way, old and known elements and to adapt them to a new use. It has long been the law that this is not patentable. Knapp v. Morss, 150 U.S. 221, 227, 228, 14 S.Ct. 81, 37 L.Ed. 1059; Consolidated Roller Mill Co. v. Walker, 138 U.S. 124, 132, 11 S.Ct. 292, 34 L.Ed. 920; and (decided by our Court) Wheeling Stamping Co. v. Standard Cap & Molding Co., 4 Cir., 155 F.2d 6, 8; Victor Cooler Door Co. v. Jamison Cold Storage Door Co., 4 Cir., 44 F.2d 288, 294, 295.

It is well settled that commercial success does not in itself constitute patentability. Said Mr. Justice Jackson in Great Atlantic & Pacific Tea Company v. Supermarket Equipment Corp., 340 U.S. 147, 153, 71 S.Ct. 127, 95 L.Ed. 162: "But commercial success without invention will not make patentability." In Smith v. Hall, 301 U.S. 216, 233, 57 S.Ct. 711, 718, 81 L.Ed. 1049, Mr. Justice (afterwards Chief Justice) Stone stated: "Commercial success may turn the scale when invention is in doubt". See, also Toledo Pressed Steel Co. v. Standard Parts, Inc., 307 U.S. 350, 357, 59 S.Ct. 897, 83 L.Ed. 1334; Vapor Blast Manufacturing Co. v. Pangborn Corporation, 4 Cir., 186 F.2d 230, 234; Murdock v. Murdock, 4 Cir., 176 F.2d 434, 437; Bulldog Electric Products Co. v. General Electric Co., 4 Cir., 105 F.2d 466, 468.

Nor have we difficulty in holding here that the evidence is strong enough to overcome the prima facie presumption of patentability arising from the granting of the patent by the Patent Office. See, Reckendorfer v. Faber, 92 U.S. 347, 23 L.Ed. 719; Murdock v. Murdock, 4 Cir., 176 F.2d 434, 437; Maibohm v. R. C. A. Victor Co., 4 Cir., 89 F.2d 317, 321; National Machine

Corp. v. Benthall Machine Co., 4 Cir., 241 F. 72, 77.

The District Judge held not only that the Pott patent was invalid but also that it was not infringed by the accused device of the defendant. Since our view that the Pott patent is invalid is sufficient to dispose of this case and to affirm the District Court's judgment, we deem it unnecessary to pass upon this question of infringement.

The judgment of the District Court is affirmed.

Affirmed.